*aee*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARYL MORGAN,      )
     )
     Plaintiff,      )
     )     No. 10 C 1240
     v.      )
     )     The Honorable William J. Hibbler
COOK COUNTY DEPUTY D. WOODS, No. 486, )
COOK COUNTY, SHERIFF THOMAS DART,      )
in official capacity,      )
     )
     Defendants.      )

## MEMORANDUM OPINION AND ORDER

In this case, Plaintiff Daryle Morgan[1] complains of his arrest by Defendant Deputy Woods in September 2009. He sets forth claims of unlawful detention and false arrest against Woods pursuant to 42 U.S.C. § 1983. He also made state law claims of malicious prosecution and false imprisonment against Woods in his complaint, though he now withdraws his malicious prosecution claim. Finally, he brings an indemnification claim against Defendant Cook County and a claim under the theory of *respondeat superior* against Defendant Dart, both based on Woods's actions. Defendants now move for summary judgment on all claims. For the following reasons, the Court GRANTS Defendants' motion.

## I.  Factual Background

The following facts are undisputed.

In the evening hours of September 13, 2009, Morgan was traveling southbound on Interstate 57 with his son. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 6.) He was

---

[1] Somewhat ironically, given the subject matter of this case, Plaintiff notes in his brief that his name is misspelled in his complaint and, thus, the case caption.

driving a 1999 grey Chevy Corvette bearing the license plate D-U-B-S G-R-L. (Def. St. ¶ 7.) The vehicle was registered in his name. (Def. St. ¶ 8.)

Woods was assigned to patrol the area where Morgan was driving that night. (Def. St. ¶ 9; Pl. Rule 56.1(b)(3)(C) Statement of Additional Facts (hereinafter "Pl. St.") ¶ 1.) While on patrol, his duties included randomly "running plates" of cars going to or from unincorporated areas. (Def. St. ¶ 10.) Woods randomly ran Morgan's plate. (Def. St. ¶ 11.) His database returned a warrant out of Indiana associated with the plate. (Def. St. ¶ 12.) When Woods saw this, he pulled Morgan over. (Def. St. ¶¶ 13-14.) He asked Morgan for his driver's license and proof of insurance, which Morgan provided. (Def. St. ¶ 15.)

Woods then compared Morgan's information to the information in the database he had in his squad car's computer. (Def. St. ¶ 18.) The database noted seven alias names associated with Morgan's driver's license, including Darnell Morgan and Daniel Morgan. (Def. St. ¶ 19; Pl. St. ¶ 3.) There were outstanding warrants listed for both Darnell and Daniel Morgan. (Pl. St. ¶¶ 3-4.) However, Woods determined that Daryle Morgan was not Daniel Morgan because the database indicated that Daniel Morgan was white, while Daryle Morgan is African-American. (Pl. St. ¶¶ 7-8.)

The database contained two descriptions for Darnell Morgan. (Def. St. ¶ 20.) The first description was of an African-American male born in June 1966 weighing 185 pounds, standing 6 feet tall, with a scar on his head and left arm and tattoos on both arms. (Def. St. ¶ 21.) The second description was of an African-American male born in June 1966 weighing 215 pounds, standing 6 feet, 2 inches tall, with driver's license number M625-1656-8089. (Def. St. ¶ 22.) Daryle Morgan's driver's license number is the same. (Def. St. ¶ 16.) His license listed his weight as 213 pounds, his height as 6 feet tall, and his birth date in March 1968. (Def. St. ¶ 17.)

A warrant for the alias name of Darnell Morgan was associated with Daryle Morgan's name and license number, and Daryle Morgan's date of birth was listed as an alias date of birth for Darnell Morgan. (Def. St. ¶¶ 23-24.)

Woods contacted the dispatch center to confirm the information displayed on his computer. (Def. St. ¶ 25.) The dispatch center confirmed that the warrant out of Indiana was valid. (Def. St. ¶ 26.) Woods returned to Morgan's car and asked Morgan to step out. (Def. St. ¶ 27.) Woods observed a scar on Morgan's left arm. (Def. St. ¶ 28.) He also later reported that Morgan had a tattoo on his upper arm. (Pl. St. ¶ 11.) Woods then informed Morgan of the warrant and asked Morgan if he was willing to follow Woods back to the District station. (Def. St. ¶ 29.) Morgan refused and told Woods that there was not a warrant out for his arrest. (Def. St. ¶¶ 29-30.) Woods then handcuffed Morgan and placed him inside Woods's squad car. (Def. St. ¶ 31.) Woods then called Morgan's wife and Morgan asked his wife to come pick up their son. (Def. St. ¶ 32.)

Upon arriving at the courthouse, Morgan was photographed and fingerprinted. (Def. St. ¶ 35.) Officer Woods did not fingerprint Morgan, nor did he follow up to see whether Morgan's fingerprints matched Darnell Morgan's fingerprints. (Def. St. ¶ 36; Pl. St. ¶ 14.) After Morgan was processed, Morgan did not have any further contact with Officer Woods. (Def. St. ¶ 37; Pl. Resp. to Def. St. (hereinafter "Pl. Resp.") ¶ 37.) Officer Woods waited at the courthouse to receive a faxed copy of the warrant. (Def. St. ¶ 38.) He received a copy of a warrant issued out of Lake County, Indiana for Darnell Morgan, an African-American male born in June 1966. (Def. St. ¶ 40.) He also received a Criminal History report associated with Plaintiff's fingerprints that listed Darnell Morgan as an alias. (Def. St. ¶ 42.)

Plaintiff appeared for an extradition hearing in an Illinois court the next morning. (Def. St. ¶ 44.) He signed a waiver of extradition, agreeing to voluntarily appear in Lake County. (Def. St. ¶ 46.) He was released from custody on September 15. (Def. St. ¶ 47.) He did not contact Lake County regarding the warrant and did not appear in court for the warrant. (Def. St. ¶¶ 48-49.)

The warrant for Darnell Morgan lists his address and states that he was born in June 1966. (Pl. St. ¶ 15.) It also lists his telephone number and social security number. (Pl. St. ¶ 15.) Daryle Morgan's name, address, and date of birth do not appear on the warrant. (Pl. St. ¶ 16.) Woods did not ask Daryle Morgan for his social security number. (Pl. St. ¶ 16.)

Prior to September 13, 2009, Daryle Morgan had been pulled over twice for outstanding warrants. (Def. St. ¶ 51.) He was allowed to leave on both occasions. (Pl. St. ¶¶ 18-19.) He has a brother named Darnell Morgan and is aware that his brother has used his name as an alias in the past. (Def. St. ¶¶ 52-53.)

**II. Standard of review**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## III. Analysis

As detailed above, it is undisputed that Wood based his decision to arrest Daryle Morgan on an outstanding warrant for someone else, Darnell Morgan. It is also undisputed that there were some discrepancies between the information Woods had in his database regarding Darnell Morgan, the subject of the outstanding warrant, and Daryle Morgan, the man standing before him on September 13, 2009. Finally, it is undisputed that Daryle Morgan was listed as an alias for Darnell Morgan. The question before the Court in resolving Morgan's § 1983 claim is simply whether Woods's decision to arrest Daryle Morgan that day was "a reasonable response to the situation facing [him] at the time." *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987) (quoting *Hill v. California*, 401 U.S. 797, 803-05, 91 S.Ct. 1106, 1110-11, 28 L.Ed.2d 484 (1971)). In other words, because the warrant gave Woods probable cause to arrest Darnell Morgan, the question is simply whether Woods reasonably mistook Daryle Morgan for Darnell Morgan. *Id.*; *See also, Hill*, 401 U.S. at 802, 91 S. Ct. at 1110.

The discrepancies before Woods are as follows. Darnell Morgan was variously described as 6 feet tall, weighing 185 pounds, and 6 feet, 2 inches tall, weighing 215 pounds. Daryle Morgan's license listed him as 6 feet tall, weighing 213 pounds. But surely a discrepancy of 2 inches or 2 pounds is not sufficient to call the reasonableness of Woods's actions into question. Darnell Morgan's name, birth date, and address did not match Daryle's. However, Daryle's name and birth date were both listed as aliases for Darnell, and Darnell could have easily lived at or listed more than one address. Indeed, if Darnell used alias names and birth dates, it would not

be surprising that he also used a false address. *Brown*, 823 F.2d at 169. One description of Darnell Morgan stated that he had tattoos on both arms, and scars on his head and left arm. Woods apparently only noticed a tattoo on one of Daryle's arms and a scar on his left arm. Scars and tattoos are more permanent than weight and addresses. Still, it is entirely possible that the officer that recorded the description of Darnell noticed a scar on his head that was more prominent at the time or that Woods could not see. It is also possible to have tattoos removed, and to apply temporary tattoos that might appear permanent. Daryle did deny being Darnell, but Woods might expect that Darnell would do the same.

At the same time as the information before Woods contained some discrepancies, it also contained a great deal of information linking Daryle and Darnell. Their race, size, and stature were the same. They used the same name and reported the same birth date, even if one did so falsely. In fact, Daryle's criminal history listed Darnell as an alias too. One of the descriptions of Darnell in the database listed a driver's license number that matched Daryle's. They both had a scar on their left arm, and a tattoo on at least one arm.

The Seventh Circuit has upheld arrests as constitutional even when there are discrepancies between the information in a warrant and that pertaining to the arrestee. *See, e.g.*, *Patton v. Przybylski*, 822 F.2d 697, 699-700 (7th Cir. 1987) (discrepancies in address and date of birth). In fact, the court upheld an arrest of a woman whose name matched a warrant, but whose race, among other things, did not. *Johnson v. Miller*, 680 F.2d 39, 41 (7th Cir. 1982). The court also upheld the second arrest of the same woman on the basis of the same warrant by an officer with knowledge of the first arrest. *Id.* at 42. This case is somewhat distinguishable from *Johnson* and *Patton* in that it seems the officers in those cases may have simply failed to notice the discrepancies. *Id.*; *Patton*, 822 F.2d at 699-700. Here, on the other hand, Woods seems to

have taken notice of the description and arrested Morgan despite some apparent discrepancies. Nonetheless, the Seventh Circuit has made clear that officers in Woods's position are left in somewhat of a dilemma in deciding whether to arrest a person when much of their information matches that of the subject of an outstanding warrant, and that Section 1983 should not be used to hold them liable for deciding to make the arrest. *Id.* (noting that even if the defendant officer had noticed the discrepancies, he would have also noticed some similarities, thus leaving him in the same dilemma); *Johnson*, 680 F.2d at 41 ("If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions"). Given that Morgan had only one tattoo and no visible scar on his head, Woods had reason to question whether Morgan was the subject of the warrant. But given that so much of the information, including name, birth date, race, size, and even driver's license number matched in one place or another, Woods also had reason to suspect that Morgan was the subject of the warrant despite the discrepancies.

The Seventh Circuit has also upheld the arrest of a man whose name matched only the alias listed for the subject of an outstanding warrant. *Brown*, 823 F.2d at 169. Thus, Morgan's case is not made more compelling under the law simply because his name did not match the name on the warrant, but an alias. One may very reasonably lament the fact that Morgan was subject to arrest as a result of a mistaken identity, *see id.* at 168, but that does not mean that Section 1983 provides him with a remedy. Seventh Circuit precedent clarifies that it does not.

Plaintiff's false imprisonment claim fails as he similarly bases it on the idea that it was unreasonable for Woods to believe that Morgan was the subject of the warrant. His claims against the County and the Sheriff also fail because they are explicitly predicated on Woods's liability.

***CONCLUSION***

For the above reasons, the Court GRANTS Defendants' motion for summary judgment. The Court enters judgment in favor of Defendants and against Plaintiff on all counts.

IT IS SO ORDERED.

_8/24/11_
Dated

Wm. J. Hibbler
Hon. William J. Hibbler
United States District Court